**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JOSEPH BIFANO and KEITH RYNEARSON,** : | |
| : | |
| Plaintiffs, | **CIVIL ACTION NO. 3:16-0245** |
| : | |
| v. | **(JUDGE MANNION)** |
| : | |
| **WAYMART BOROUGH and FREDERICK J. GLAVICH,** : | |
| Defendants. : | |

## MEMORANDUM

Presently before the court is a motion for a protective order filed by defendants Waymart Borough ("Borough") and Frederick J. Glavich ("Police Chief Glavich"). (Doc. 28). The defendants' motion is in response to the request by plaintiffs Joseph Bifano ("Corporal Bifano") and Keith Rynearson ("Sergeant Rynearson") to depose a Borough councilmember, Jane Varcoe ("Councilmember Varcoe"). The defendants seek to protect confidential attorney-client communications during closed-door executive meetings with the solicitor of the Borough, Chris Farrell ("Solicitor Farrell"). Based on the foregoing reasons, the defendants' motion is **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

On February 11, 2016, the plaintiffs initiated this civil rights action alleging that the defendants violated Pennsylvania's Whistleblower Law, 43

PA. STAT. ANN. §1421 *et seq.*, the First Amendment, and that Police Chief Glavich defamed the plaintiffs under Pennsylvania law. (Doc. 1). The plaintiffs' dispute revolves around their firing from the Borough's police department on January 5, 2016 and the events leading up to their firing. The plaintiffs allege that their firing was in retaliation for complaints they made about Police Chief Glavich's on-duty conduct.

On March 16, 2016, the defendants filed a motion to dismiss the plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 8). On December 22, 2016, the court granted in part and denied in part the motion to dismiss. (Doc. 18). The court also granted leave to the plaintiffs to amend their whistleblower claim. The plaintiffs did not file an amended complaint. The defendants answered the plaintiffs' complaint on January 4, 2017. (Doc. 19).

The court held a case management conference with the parties on February 7, 2017 and, currently, the parties are engaged in discovery. (*See* Doc. 23). The plaintiffs seek to depose Councilmember Varcoe. (Doc. 28 ¶2). Her deposition is currently scheduled for May 5, 2017. (Doc. 35 at 2). The plaintiffs believe that Councilmember Varcoe has relevant information regarding the true reason for their firing based on an email communication the plaintiffs received directly from her. (*See* Doc. 36, Ex. D). The plaintiffs also

seek to depose former mayor of the Borough, Jack Millard,[1] and treasurer of the Borough, Shelly Gogolski ("Treasurer Gogolski"). (Doc. 28 ¶5).

On April 3, 2017, after failed discussions with the plaintiffs' counsel regarding the scope of depositions, particularly Councilmember Varcoe's deposition, the defendants filed the current motion for a protective order with a brief in support. (Docs. 28–29). The plaintiffs properly filed a brief in opposition with exhibits on April 19, 2017, (Docs. 35–36). The defendants filed a formal reply brief on April 17, 2016, with an attached exhibit. (Doc. 33).

The defendants request that the court issue a broad protective order prohibiting Councilmember Varcoe, Jack Millard, Treasurer Gogolski, employees, and officers of the Borough from testifying or revealing the substance of any discussions that took place in executive sessions/meetings held in the presence of Solicitor Farrell based on the attorney-client privilege. (Doc. 28-1). The defendants' motion and brief in support refer to "executive sessions" in the plural, indicating that more than one session or meeting took place. (Doc. 28 ¶3; Doc. 29 at 2). The plaintiffs' brief in opposition discusses

---

[1] The plaintiffs' complaint and the defendants' motion and proposed order refer to the former mayor as Jack Millard. (Doc. 1 ¶21; Doc. 28 ¶5; Doc. 28-1). The plaintiffs' brief in opposition and the exhibit of the minutes from the September 8, 2015 meeting refer to the former mayor as John Millard. (Doc. 35 at 1; Doc. 36 at 5). The court will continue to refer to the former mayor as Jack Millard in accordance with the plaintiffs' complaint until the parties clarify otherwise.

3

a September 8, 2015 executive meeting that took place at some point during a regular, public meeting of the Borough. (*See* Doc. 36, Ex. A). Councilmember Varcoe was in attendance at this meeting; Solicitor Farrell was excused from attendance. (*See id*.). Jack Millard was not in attendance and, instead, a letter was submitted on his behalf and read into the record noting his resignation as mayor of the Borough, effective as of the date of the meeting. (*Id*., Ex. A at 4). No guests or citizens from the public were in attendance at the meeting. (*Id*., Ex. A at 2).

The defendants' reply refers to an executive meeting held on October 13, 2015 after the close of a regular, public meeting held on that date. (*See* Doc. 33-1). The meeting was called by Solicitor Farrell at 7:14 p.m. specifically for the purpose of "discuss[ing] possible litigation within the police department." (*Id*. at 5). Jane Varcoe was likely in attendance at this executive meeting. One citizen from the public was in attendance at the regular meeting. (*Id*. at 2). In addition, a borough supervisor from Uniondale, Pennsylvania attended the regular meeting. (*Id*. at 4).

The defendants have not indicated any other specific dates where executive meetings occurred, although the court is sure that more did in fact occur either with or without Solicitor Farrell present. (*See, e.g.*, Doc. 36, Ex. C). The court's discussion, however, will be limited to communications during the above two meetings as these are the only two dates where the parties

4

have provided the court with sufficient facts to make a determination with respect to privileged information.

**II.	DISCUSSION**

Generally, the scope of discovery is broad. "Parties may obtain discovery regarding any *nonprivileged* matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1) (emphasis added). The information need not be admissible to be discoverable. *Id*. Privileged information, however, is clearly not discoverable. The court must limit discovery if it determines that the information sought is outside the proper scope of discovery. FED. R. CIV. P. 26(b)(2)(iii).

A motion for a protective order is a proper method for challenging inappropriate discovery requests. The court's general authority to issue a protective order is governed by Federal Rule of Civil Procedure 26©, which reads, in pertinent part:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending—or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.

FED. R. CIV. P. 26(c)(1). The court may grant various forms of relief under Rule 26©, including "forbidding disclosure of discovery" and "forbidding inquiry into certain matters, or limiting the scope of disclosure of certain matters." FED. R. CIV. P. 26(c)(1)(A), and (D). The decision to grant a protective order, like other rulings regarding the scope of discovery, is within the court's discretion. *See Shingara v. Shiles*, 420 F.3d 301, 305 (3d Cir. 2005); *Mass. Sch. of Law at Andover, Inc. v. Am. Bar. Ass'n*, 107 F.3d 1026, 1032 (3d Cir. 1997).

The party seeking the protective order bears the burden of demonstrating "good cause" for that protection. *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995); *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786–87 (3d Cir. 1994). "'Good cause' is established when it is specifically demonstrated that disclosure will cause a clearly defined and serious injury." *Glenmede*, 56 F.3d at 483. There must be a "particular need for protection." *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986). "'Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning,' do not support a good cause showing." *Pansy*, 23 F.3d at 786 (quoting *Cipollone*, 785 F.2d at 1121).

Here, the defendants seek protection because they believe the plaintiffs seek information that is not discoverable—*i.e.*, information that is protected by the attorney-client privilege. FED. R. CIV. P. 26(b)(1). Similar to the burden

6

on the party seeking a protective order, the party asserting the attorney-client privilege bears the burden of showing that the materials or communications at issue are protected from disclosure. *Memory Bowl v. N. Pointe Ins. Co.*, 280 F.R.D. 181, 186 (D.N.J. 2012); *Scott Paper Co. v. United States*, 943 F. Supp. 489, 499 (E.D. Pa. 1996). This comports with Rule 26 which explicitly provides that a party withholding information based on a privilege must "expressly make [that] claim" and must "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing the information . . ., will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(2)(5)(A).

The purpose of the attorney-client privilege[2] is "to encourage full and frank communications between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The

---

[2] Privilege law in federal courts is governed by the federal rules of evidence. Federal Rule of Evidence 501 provides that federal law governs a claim of privilege except in cases where state law supplies the rule of decision regarding a claim or defense. Fed. R. Evid. 501 (incorporating *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1983)). Where a federal claim is initiated in court with a state law claim, the federal rule will apply. *Wm. T. Thompson Co. v. Gen. Nutrition Corp., Inc.*, 671 F.2d 100, 104 (1982). The plaintiffs' complaint contains a federal constitutional claim along with supplemental state law claims and is, thus, governed by federal privilege law.

7

traditional articulation of the attorney-client privilege adopted in this circuit contains the following elements:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers © for the purpose of securing primarily either (I) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Maldonado v. New Jersey*, 225 F.R.D. 120, 127 (D.N.J. 2004) (quoting *In re Grand Jury Investigation,* 599 F.2d 1224, 1233 (3d Cir. 1979)). "The privilege covers communications made by the client as well as the attorney and it 'exists to protect not the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice.'" *Lawless v. Del. River Port. Auth.*, No. 11-7306, 2013 WL 180347, at *1 (E.D. Pa. Jan. 16, 2013) (quoting *Upjohn*, 449 U.S. at 390). The privilege belongs to the client and only the client may waive it. *Haines v. Liggett Grp. Inc.,* 975 F.2d 81, 90 (3d Cir. 1992).

Generally, information within the scope of the attorney-client privilege will be "zealously protected." *Id*. (quoting 8 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §2017 (1970)). There are, however,

limitations. The privilege extends to the communications between the attorney and his or her client, but not to the disclosure of underlying facts incorporated into the communication. *Upjohn*, 449 U.S. at 395–96. In addition, "[b]ecause the attorney-client privilege obstructs the truth-finding process, it is construed narrowly." *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1423 (3d Cir. 1991). The application of the privilege must be determined on a "case-by-case" basis, *Upjohn*, 449 U.S. at 396–97, and it "protects *only* those disclosures—necessary to obtain informed legal advice—which might not have been made absent the privilege," *Westinghouse,* 951 F.2d at 1423–24 (quoting *Fisher v. United States*, 425 U.S. 391, 403 (1976)) (emphasis in original).

Here, the defendants have sustained their burden of proving the attorney-client privilege with respect to communications that took place at the October 13, 2015 executive meeting. They have not sustained their burden with respect to the September 8, 2010 meeting. Nor have they sustained their burden with respect to any other date where similar executive meetings took place.

Under Pennsylvania's Borough Code, 8 Pa. Cons. Stat. §101 *et seq.*, a borough's solicitor has primary control over legal matters of the borough. 8 Pa. Cons. Stat. §1116. The solicitor must be licensed to practice law in the Commonwealth and he or she "serves at the pleasure of [borough] council."

9

*Id*. The solicitor has several duties, including: (1) preparing legal documents at the request of council or the mayor; (2) prosecuting or commencing actions on behalf of the borough; and (3) furnishing written legal opinions to council, committees of council, the mayor, or a head of a borough department when requested by that body or person acting in their official capacity. §1117(a)(1)–(3).

The solicitor serves as the Borough's attorney, inclusive of its constituent parts. The privilege will, therefore, extend to the body's governing parts—*i.e.,* council— or those acting on the Borough's behalf in their official capacity. *See* 8 PA. CONS. STAT. §1117(a)(3) (requiring the solicitor to provide legal opinions at the request of council, committees of council, the mayor, or a head of a borough department); *see also Upjohn*, 499 U.S. at 394 (extending the attorney-client privilege to communications between corporate counsel and employees acting within the scope of their duties where the communications were made in order to obtain legal advice). However, only the Borough, acting through its governing body, the council, may waive the attorney-client privilege. *See Bd. of Supervisors of Milford Twp. v. McGogney,* 13 A.3d 569, 574 (Pa. Commw. Ct. 2011).

With respect to communications made during the September 8, 2015 executive meeting, the defendants' request for protection is denied. The existence of the attorney-client privilege presumes that a communication was

made either to or from an attorney, in this case Solicitor Farrell, for the purpose of seeking or rendering legal advice. There is no indication that Solicitor Farrell was in attendance at the September 8, 2015 meeting. In two places, the minutes from the regular meeting indicate that Solicitor Farrell was excused from attendance. (Doc. 36, Ex. A at 1–2). The plaintiffs raised this issue and the defendants did not respond. As such, the defendants have not met their burden of showing that a communication to or from an attorney actually took place and, therefore, that the privilege applies to that meeting.

With respect to the October 13, 2015 executive meeting, it is clear that the purpose of that meeting was to give legal advice and obtain the necessary information needed for legal advice. The regular meeting minutes clearly indicate that the purpose of the executive meeting was "to discuss possible litigation within the police department." (Doc. 33-1 at 5). Solicitor Farrell was clearly in attendance as he is the one who called the meeting to begin after the regular meeting adjourned. (See *id*.). Councilmember Varcoe and Treasurer Gogolski appear to have been in attendance at the executive meeting as they clearly attended the regular meeting immediately preceding the executive meeting. (*Id*. at 1). The only parties unrelated to the Borough noted as being in attendance at the regular, public meeting included a citizen and a borough supervisor from Uniondale, Pennsylvania. There is no indication that these third-parties stayed beyond the regular meeting and were

11

allowed to sit in on the executive meeting. The plaintiffs have not argued otherwise. Thus, at this stage the Borough is entitled to protection for communications made during the October 13, 2015 executive meeting. The defendants' request will, therefore, be granted with respect to that meeting, with limitations.

The defendants request a protective order prohibiting Councilmember Varcoe, Jack Millard, Treasurer Gogolski, employees, and officers of the Borough from testifying or revealing the substance of any discussions that took place in all executive meetings held in the presence Solicitor Farrell. This request is too broad and the defendants have not shown entitlement to such a broad order in the absence of specific meeting dates and additional facts. The Borough is, however, entitled to protection of communications that took place at the executive meeting held on October 13, 2015 at approximately 7:15 p.m. after the regular, public meeting adjourned.

In accordance with the above, the court will issue an order prohibiting the plaintiffs' counsel from inquiring into communications that took place at the October 13, 2015 executive meeting at the deposition of Councilmember Varcoe and the depositions of any other borough officials in attendance at that executive meeting as indicated by the regular meeting minutes. *See* FED. R. CIV. P. 26(c)(1)(D). With respect to any other alleged executive meetings between Solicitor Farrell and certain Borough officials or employees, the court

is without sufficient facts to make a determination. The court would need more information to properly determine if the attorney-client privilege applied as that determination must be made on a case-by-case basis. *Upjohn*, 449 U.S. at 396–97. A blanket statement that Solicitor Farrell was in attendance at a Borough meeting at some unspecified time to discuss unspecified matters will not suffice.

In addition, though the plaintiffs' counsel may not inquire into discussions that took place at the October 13, 2015 executive meeting, counsel may inquire as to whether the particular official was actually in attendance at that meeting. Counsel may also inquire as to whether any third-parties were in attendance at the executive meeting, information that would not be known without some initial inquiry. The plaintiffs' counsel should continue to adhere to the court's accompanying order irrespective of a deponents answer.

### III. CONCLUSION

Based on the above, the defendants' motion for a protective order, (Doc. 28), is **GRANTED IN PART** and **DENIED IN PART**. The scope of discovery will be limited to protect the Borough from disclosure of information protected by the attorney-client privilege. The plaintiffs' counsel will be prohibited from inquiring into communications that took place at the October

13

13, 2015 executive meeting held after approximately 7:15 p.m. at the deposition of Councilmember Varcoe and the depositions of any other borough officials in attendance at that executive meeting as indicated by the regular meeting minutes attached to the defendants' reply brief. (Doc. 33-1). An appropriate order will follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATED: April 26, 2017**
O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2016 MEMORANDA\16-0245-02.wpd